```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MELISSA ANSPACH, KURT A.         :
ANSPACH, KAREN E. ANSPACH,       :   CIVIL ACTION
                                 :
          Plaintiffs,            :   No. 05-810
                                 :
     v.                          :
                                 :
                                 :
CITY OF PHILADELPHIA,            :
DEPARTMENT OF PUBLIC             :
HEALTH, et al,                   :
                                 :
          Defendants.            :
                                 :
```

## MEMORANDUM AND ORDER

**JOYNER, J.**                                          **June 27, 2005**

Via the instant Motion, Defendants John F. Domzaliski, Louise Lisi, Maria Fedorova, Mary Gilmore, and the City of Philadelphia move to dismiss Plaintiffs' Complaint. Because Plaintiffs have failed to state a claim under federal law, this action must be dismissed for lack of federal question jurisdiction.

## Factual Background

On January 26, 2004, Plaintiff Melissa Anspach visited a Health Center operated by the City of Philadelphia Department of Public Health. Melissa, who had engaged in sexual activity on January 23, 2004, believed that she might be pregnant and requested a pregnancy test. Plaintiffs allege that Melissa was told by a receptionist that she could not obtain a pregnancy test

"because it was not family planning day." Melissa left the Health Center, but returned shortly thereafter at the prompting of a friend, who told Melissa to "ask for the morning after pill." Melissa followed this advice and was directed to the pediatric ward, where she provided her name and date of birth, indicating that she was sixteen years of age. See Complaint, ¶ 22-26.

Plaintiffs allege that Melissa next spoke with Defendant Maria Fedorova, a social worker, for approximately ten minutes, during which they discussed sexually transmitted diseases, birth control, and emergency contraception. Ms. Federova allegedly told Melissa that the Health Center could provide pills "that would prevent [her] from getting pregnant," and Melissa agreed to take these pills. Defendant Mary Gilmore, a registered nurse, then took Melissa's temperature and blood pressure, and provided Melissa with emergency contraception marketed under the trade name Nordette.[1] Nurse Gilmore told Melissa to take four pills right away and then four more in twelve hours. Plaintiffs contend that before Melissa took the pills, Nurse Gilmore

---

[1] This method of emergency contraception, also known as the "morning-after pill," uses a combination of progestin and estrogen to prevent pregnancy. Depending on the phase of the patient's menstrual cycle, emergency contraception may prevent ovulation or fertilization. If fertilization has already occurred, emergency contraception may alter the endometrium to prevent implantation of the fertilized egg. If a fertilized egg has already implanted in the endometrium, emergency contraception will have no effect. See http://www.fda.gov/cder/drug/infopage/planB/planBQandA.htm.

2

consulted with Ms. Federova "to find out how Melissa should take the pills," and consulted with Defendant Jitendra Shah, a physician, to ask if Dr. Shah wanted to examine Melissa.  After Melissa took the pills in Defendant Gilmore's presence, she allegedly asked whether the pills would make her sick.  Nurse Gilmore reportedly consulted with Dr. Shah once again, who advised Nurse Gilmore to tell Melissa to drink ginger ale.  See Complaint, ¶ 26-34.

After taking her second dose of pills at approximately 4:00 A.M. on the morning of January 27, 2004, Melissa experienced severe stomach pains and began vomiting.  Melissa's father, Plaintiff Kurt Anspach, came to her room and found Melissa lying on the floor.  Mr. Anspach contends that Melissa's face was swollen and red, and that Melissa asked if she was going to die.  Upon learning that Melissa had taken emergency contraception, Mr. Anspach called their family physician and the poison control center, and took Melissa to the emergency room.  Melissa was released from the hospital the same day, but returned because of sub-conjunctive hemorrhaging in her eye resulting from excessive vomiting.  Melissa Anspach and her parents contend that the events described above have caused them to suffer severe emotional distress.  See Complaint, ¶ 35-38.

Plaintiffs bring the instant action against Defendants, maintaining that their state and federal Constitutional rights

were violated as a result of Defendants' actions.  Mr. and Mrs. Anspach contend that they were deprived of their right to familial privacy when Defendants provided Melissa with medication without her parents' consent.  Similarly, Melissa contends that Defendants' actions deprived her of the opportunity for parental consultation and guidance.  She has also raised a claim of assault and battery against Defendants Federova and Gilmore for dispensing medication without Melissa's informed consent. Melissa contends that she was told that emergency contraception would prevent her from becoming pregnant, but was never informed that the pills could cause miscarriage or termination in the event she was already pregnant.  Plaintiffs further bring claims of negligent supervision against Dr. Shah, and negligent and intentional infliction of emotional distress against the individual Defendants.

## Standard of Review

In considering a motion to dismiss, a court must consider only those facts alleged in the complaint and accept all of the allegations as true.  <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3rd Cir. 1997).  However, the court need not credit the plaintiff's "bald assertions" or "legal conclusions" where such conclusions are unsupported by the pleadings.  <u>Morse</u>, 132 F.3d at 906.  A motion to dismiss may only be granted where the

plaintiff's allegations fail to state any claim upon which relief could be granted.  <u>Morse</u>, 132 F.3d at 906.

## **Discussion**

To state a cause of action for state deprivation of a constitutional right, a plaintiff must allege that he was deprived of a federal right by a defendant acting under color of state law.  42 U.S.C. § 1983; <u>Gomez v. Toledo</u>, 446 U.S. 635, 640 (1980).  In Count I, Mr. and Mrs. Anspach contend that they were deprived of their fundamental right to direct the rearing and education of their minor child as a result of Defendants' course of conduct.  In Count II, Melissa Anspach alleges that Defendants deprived her of her right to parental guidance and advice in matters relating to medical care.  Both counts arise out of the liberty interests granted by the Due Process Clause of the Fourteenth Amendment.  Plaintiffs also allege that Defendants violated their First Amendment right to free exercise of religion by providing Melissa with a medication that can cause termination of a pregnancy, defined under Pennsylvania law as commencing with fertilization.  18 Pa. C.S. 3203.

**I. Rights of Parental Guidance and Familial Privacy**

It is well established that the fundamental right of parents to direct the upbringing and education of their children is protected by the Due Process Clause of the Fourteenth Amendment.

Troxel v. Granville, 530 U.S. 57, 65 (2000); Wisconsin v. Yoder, 406 U.S. 205, 232 (1972); Prince v. Massachusetts, 321 U.S. 158, 166 (1944); Pierce v. Society of Sisters, 268 U.S. 510, 534-35 (1925).  This right, however, is not absolute.  The state has a wide range of power to limit parental freedom in matters relating to child welfare.  Prince, 321 U.S. at 167.  Furthermore, the right of a parent to direct a child's upbringing cannot be understood in isolation.  Minors, as well as adults, are protected by the Constitution and possess fundamental rights that may in some instances outweigh those possessed by their parents. Carey v. Population Servs. Int'l, 431 U.S. 678, 692 (1977) (quoting Planned Parenthood of Central Missouri v. Danforth, 428 U.S. 52, 74 (1976)).

   **A. No State Interference with Parent-Child Relationship**

   Even viewing the facts of the Complaint in their most favorable light, Plaintiffs have failed to state a valid claim for relief arising from violation of the above-described parental rights.  Plaintiffs maintain that when Melissa Anspach visited the Health Center, Defendants were aware that she was only sixteen, but never asked Melissa whether her parents knew of her predicament, nor advised her to consult with her parents before deciding whether to take emergency contraception.  Complaint, ¶ 27, 28.  In Counts I and II of their Complaint, Plaintiffs conclude that Defendants' course of conduct "was intended to

influence Melissa to refrain from discussing with her parents her possible pregnancy and what course of conduct was appropriate," and violated Mr. and Mrs. Anspach's rights "by usurping the parental role."  Id., ¶ 67, 68, 72, 77.  This Court cannot credit Plaintiff's legal conclusions, however, as they are entirely unsupported by the factual allegations in the Complaint concerning Melissa's interaction with the Health Center staff.  Plaintiffs do not maintain that Defendants instructed Melissa not to consult with her parents or otherwise prevented her from seeking their guidance and advice with respect to reproductive matters.  At best, Plaintiffs have alleged only that Defendants failed to encourage Melissa to seek her parents' assent.  Such passive failure on the part of a state agency and its employees cannot form the basis of a constitutional claim of the kind raised by Plaintiffs.

In the key cases defining the scope of the fundamental parental right to control a child's rearing and education, the Supreme Court has held that a state may not forbid parents from educating their children in accordance with their beliefs. See Yoder, 406 U.S. at 232-34 (compulsory high school education as applied to Amish minors); Pierce, 268 U.S. 510, 534-35 (compulsory education within the public school system); Meyer v. Nebraska, 262 U.S. 390, 400 (1923) (statute prohibiting teaching of foreign languages).  Plaintiffs have identified no authority,

however, to suggest that the scope of these cases can be expanded to allow constitutional claims against states that <u>permit</u> parental involvement but merely fail to take steps to encourage more active parental participation.  This fundamental legal distinction was highlighted in 1980 by the Sixth Circuit Court of Appeals, in connection with a challenge to the Michigan Health Department's provision of contraceptive information and services to minors without parental notification.  <u>Doe v. Irwin</u>, 615 F.2d 1162, 1168 (6th Cir. 1980), <u>cert. denied</u>, 449 U.S. 829 (1980).  The Sixth Circuit found that earlier Supreme Court cases dealt only with states "either requiring or prohibiting some activity."  <u>Id</u>.  In contrast, the state of Michigan, in establishing a voluntary birth control clinic, "imposed no compulsory requirements or prohibitions" affecting the rights of the parent-plaintiffs.  <u>Id</u>.  The court explained its findings as follows:

> There is no requirement that the children of the plaintiffs avail themselves of the services offered by the Center and no prohibition against the plaintiffs' participating in decisions of their minor children on issues of sexual activity and birth control.  The plaintiffs remain free to exercise their traditional care, custody and control over their unemancipated children.  <u>Id.</u>

We find the Sixth Circuit's interpretation of Supreme Court precedent on the issue of parental rights to be compelling.  <u>See also</u> <u>Parents United for Better Schs. Inc. v. Sch. Dist. of Pa. Bd. of Educ.</u>, 148 F.3d 260, 276 (3rd Cir. 1998) (favorably citing the reasoning of <u>Irwin</u> in upholding a voluntary condom

distribution program in Philadelphia schools).  In establishing a voluntary health clinic, the state of Pennsylvania has neither required that minors within the Commonwealth avail themselves of its services, nor prohibited parents from participating in their children's educational, moral, or physical upbringing.  Thus, Plaintiffs have failed to state a constitutional claim for violation of Mr. and Mrs. Anspach's right to direct the upbringing of their minor child, Melissa.  For the same reasons, Plaintiff Melissa Anspach has failed to state a constitutional claim for violation of her right to receive parental guidance.

**B. No Parental Right to Be Notified of a Minor Child's Exercise of Reproductive Privacy Rights**

Even if Plaintiffs' Complaint did allege facts sufficient to support a finding that Defendants' actions prevented Mr. and Mrs. Anspach from counseling their daughter, there is an alternative ground for dismissal of Plaintiffs' claims.  There is simply no constitutional basis to support Plaintiffs' contention that parents have a constitutional right to be informed of their minor child's request for family planning services.

Minors, as well as adults, have a fundamental right to privacy in the intimate area of reproductive decision-making. See Carey, 431 U.S. at 692 (citing Danforth, 428 U.S. at 74). States that have adopted policies aimed at protecting this privacy right, however, often face challenges from parents

alleging intrusion upon the sphere of familial privacy and parental guidance. In Danforth, for example, the Supreme Court considered the interplay between the reproductive rights of minors and the rights of their parents in the context of a Missouri law requiring parental consent to abortion for minors. Danforth, 428 U.S. at 74-75. Finding the absolute parental consent requirement unconstitutional, the Court held that a parent's independent interest in terminating or continuing a minor daughter's pregnancy is "no more weighty than the right of privacy of the competent minor mature enough to have become pregnant." Id. at 75. In a plurality opinion the following year, the Supreme Court found that the decision in Danforth "a fortiori foreclosed" any absolute prohibition on the distribution of contraceptives to minors without parental consent. Carey, 431 U.S. at 694. Thus, to the extent that Plaintiffs object to Defendants' failure to obtain the consent of Mr. and Mrs. Anspach before prescribing emergency contraception to Melissa Anspach, their constitutional claims must fail as a matter of law.

To the extent that Plaintiffs seek recovery on the basis of Defendants' failure to notify Melissa's parents of her request for emergency contraception, their claim must fail as well. There is absolutely no authority before this Court to support the proposition that a parent's right to be notified that their child has sought out family planning services outweighs the minor

child's interest in reproductive privacy.

While the Supreme Court has upheld the constitutionality of parental notice requirements under some circumstances, the Court has never held that parents have a constitutional right to such notification, either with respect to contraception or abortion.[2] See, e.g., Lambert v. Wicklund, 520 U.S. 292, 297-98 (1997) (per curiam); Ohio v. Akron Ctr. for Reproductive Health, 497 U.S. 502, 510-11 (1990); H.L. v. Matheson, 450 U.S. 398, 409-10 (1981); See also Irwin, 615 F.2d at 1169 (finding that the opinions in Carey do not indicate that parents have a constitutional right to notification). Rather, the language used by the Supreme Court suggests that parental notification requirements pose significant constitutional challenges, and may be struck down if they do not provide minors seeking abortions with opportunities for exemption or judicial bypass.[3]  See, e.g.,

---

[2] Plaintiffs contend that the standards governing abortion should govern discussion of emergency contraception, because emergency contraception can result in the termination of a pregnancy, defined under Pennsylvania law as a fertilized embryo. See 18 Pa. C.S. 3203. This Court declines to determine whether emergency contraception is closer in kind to traditional methods of birth control or to chemically-induced abortion. For this reason, we will consider the law governing parental notification in the context of both abortion and contraception.

[3] The Supreme Court has similarly held that statutes imposing an absolute requirement of parental consent are unconstitutional, finding that the failure to provide judicial bypass or other exemption procedures imposes an undue burden on a minor's right to choose. See Ohio v. Akron Center for Reproductive Health, 497 U.S. at 511; City of Akron v. Akron Center for Reproductive Health, 462 U.S. 416, 440 (1983); Bellotti v. Baird, 443 U.S. 622, 651 (1979) (plurality).

Hodgson v. Minnesota, 497 U.S. 417, 450-55, 461 (1990) (finding Minnesota's two-parent notice statute unconstitutional without procedures for judicial bypass); Lambert, 520 U.S. at 297-98 (upholding Montana notice statute with judicial bypass procedure); Ohio v. Akron Ctr. for Repro. Health, 497 U.S. at 510-11 (applying Bellotti bypass procedures to uphold Ohio notice statute); Matheson, 450 U.S. at 409 (upholding Utah parental notification law as applied to an immature, unemancipated minor seeking abortion); See also Planned Parenthood v. Heed, 390 F.3d 53 (1st Cir. 2004); Planned Parenthood of the Rocky Mts. Servs. Corp. v. Owens, 287 F.3d 910 (10th Cir. 2002); Planned Parenthood v. Miller, 63 F.3d 1452 (8th Cir. 1995).

Furthermore, numerous courts have held that parental notice requirements in the context of contraception and family planning services are inconsistent with Title X, which imposes a burden of confidentiality on providers of such services.  42 C.F.R. § 59.11; See, e.g., County of St. Charles v. Missouri Family Health Council, 107 F.3d 682, 684-85 (8th Cir. 1997); New York v. Heckler, 719 F.2d 1191, 1196-97 (2nd Cir. 1983); Planned Parenthood Fed. of Am. v. Heckler, 712 F.2d 650, 656-61 (D.C. Cir. 1983).

In light of the above authorities, Plaintiffs are wrong to suggest that they have a constitutional right to be notified of their daughter's request for emergency contraception.  Thus,

12

Counts I and II fail to state valid constitutional claims.

**II. Right to Free Exercise of Religion**

Plaintiffs also maintain that Defendants violated their right to free exercise of religion by providing Melissa with a medication that can cause termination of a pregnancy. Although the parties have not briefed this issue, this Court finds that Plaintiffs have failed to state a valid cause of action for violation of their rights under the Free Exercise Clause of the First Amendment.

In merely alleging that Defendants "gave [Melissa] a substance that, in some cases, may result in the termination of a pregnancy," and that Melissa would not have taken the pills had she known of this potentiality, Plaintiffs have failed to plead any constitutionally relevant injury in fact. See Complaint, ¶ 74, 80. Plaintiffs do not allege that Melissa was pregnant at the time she took the emergency contraception, nor do they allege that Defendants' actions actually resulted in the termination of a pregnancy in violation of Melissa's religious beliefs.

Furthermore, the facts of the Complaint, viewed in the light most favorable to Plaintiffs, do not suggest that Defendants "placed a substantial burden on [Plaintiffs'] observation of a central religious belief or practice." See Hernandez v. Commissioner, 490 U.S. 680, 699 (1989). Plaintiffs admit that

Melissa voluntarily requested "the morning after pill," and do not allege that she made any inquiries as to the effect of emergency contraception on a fertilized ovum.  Rather, Plaintiffs merely contend that Melissa was misled by the designation "emergency contraception" in the literature provided by the Department of Health.  Moreover, Plaintiffs do not maintain that Defendants compelled Melissa to take the pills, or otherwise prevented her from consulting with her parents or religious advisors regarding the implications of her decision.

Finally, it is well established that parental liberty interests are not violated merely because religious beliefs are implicated in the claim.  <u>Irwin</u>, 615 F.2d at 1168 (citing <u>Prince</u>, 321 U.S. at 166).

### Conclusion

This Court recognizes that parental guidance is invaluable to a child's moral, social, and religious development.  Parental involvement is particularly important during the period of adolescence, when children struggle with weighty issues of peer pressure and sexuality.  Within any family unit, parents and their adolescent children have a shared responsibility to engage in discussion of personal and family values, and to learn from each other's perspectives.  These ideals are reflected in the Due

Process Clause of the Fourteenth Amendment, which protects the fundamental right of parents to direct the upbringing and education of their children.

Plaintiffs interpret this parental right to require that public health centers disclose to parents a minor child's request for family planning services.  In doing so, Plaintiffs stretch the boundaries of this constitutional doctrine to the breaking point.  The Health Center's failure to notify Mr. and Mrs. Anspach of their daughter's request for emergency contraception in no way prevents Plaintiffs from discussing responsible sexual activity or religious doctrine at home.  Furthermore, Mr. and Mrs. Anspach's rights under the Due Process Clause do not include the right to receive state notification upon their minor daughter's exercise of her fundamental right to privacy in reproductive decision-making.

In sum, Plaintiffs' allegations fail to state any constitutional claim upon which relief could be granted.  As there is no federal question remaining before this Court, this action shall be dismissed for lack of jurisdiction.

An appropriate Order follows.

```
               IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MELISSA ANSPACH, KURT A.        :
ANSPACH, KAREN E. ANSPACH,      :    CIVIL ACTION
                                :
          Plaintiffs,           :    No. 05-810
                                :
     v.                         :
                                :
                                :
CITY OF PHILADELPHIA,           :
DEPARTMENT OF PUBLIC            :
HEALTH, et al,                  :
                                :
          Defendants.           :
```

**ORDER**

     AND NOW, this 27th day of June, 2005, upon consideration of the Motion to Dismiss filed by Defendants John F. Domzaliski, Louise Lisi, Maria Fedorova, Mary Gilmore, and the City of Philadelphia (Doc. No. 6), and Plaintiffs' response thereto (Doc. No. 14), it is hereby ORDERED that the Motion is GRANTED and this action is dismissed for lack of subject matter jurisdiction.

                                                                         BY THE COURT,

                                                                         s/J. Curtis Joyner
                                                                         J. CURTIS JOYNER, J.